UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA RUIZ GOMEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:23-cv-777-CSK<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 26) |

Plaintiff Martha Ruiz Gomez seeks judicial review of a final decision by Defendant Commissioner of Social Security denying her application for Disability Insurance Benefits.[1] (ECF No. 1.) Plaintiff filed a motion for summary judgment seeking a remand for benefits or for further proceedings. (ECF No. 17.) The parties subsequently agreed this case should be remanded for further proceedings but disagree on the scope of review upon remand. (ECF Nos. 26 at 7-8; 27.)

For the reasons below, Plaintiff's motion is GRANTED IN PART, and the final decision of the ALJ is REVERSED AND REMANDED for further proceedings consistent with the analysis below.

/ / /

---

[1] This action was assigned the undersigned on the consent of all parties and pursuant to 28 U.S.C. § 636(c). (ECF Nos. 9, 19, 22.)

1

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an ALJ; and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the ALJ's decision by a federal district court. 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On March 5, 2021, Plaintiff applied for Disability Insurance Benefits, alleging she has been disabled since July 9, 2020. (Administrative Transcript ("AT") 56 (available at ECF No. 10).) Plaintiff's application was denied initially and upon reconsideration; she sought review with an ALJ. (AT 88, 106, 125.) The ALJ issued a decision on April 25, 2022 finding Plaintiff not disabled. (AT 56-69.)

Relevant here, the ALJ found at step two that Plaintiff had the following severe impairments: left knee soft tissue tear; left knee arthritis; obesity; cervical degenerative disc disease; and right-hand carpal tunnel syndrome. (AT 59.) In doing so, the ALJ did not discuss the medical evidence and related diagnoses concerning Plaintiff's right sided shoulder and arm impairments. (*See id.*) Additionally, the ALJ found Plaintiff's depressive disorder to cause minimal limitations, and so did not include it in the list of severe impairments. (AT 59-60.) At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. (AT 60-61.) The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)), except that Plaintiff should:

> Avoid overhead bilateral pushing or pulling; occasionally reach over the head bilaterally and otherwise frequently; only frequently handle with her right hand; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders and scaffolds; not work around unprotected heights; and avoid concentrated exposure to moving mechanical parts, and is limited mentally to understanding remembering and carrying out simple routine and repetitive tasks and using judgment limited to simple work related decisions.

(AT 61.) In formulating this residual functional capacity, the ALJ stated he considered all of the evidence in the record. (AT 62.) This included Plaintiff's testimony and function reports concerning her pain and ability to perform daily activities. (AT 62-63.) This also included a July 15, 2021 medical source statement from Dr. Brian A. Lutes, D.C., who diagnosed Plaintiff with cervical and lumbar disorders, disc protrusions in the lumbar spine, and severe central stenosis of the cervical spine. (AT 488-90.) Dr. Lutes opined:

3

> [Plaintiff] could lift and carry less than ten pounds occasionally and frequently; can stand and walk and sit for less than two hours during an eight hour day; can sit for a half hour at one time, stand for a half hour at one time, walk for fifteen minutes every fifteen minutes; requires the opportunity to shift positions at will from sitting or standing/walking; never twist, stoop, crouch, climb stairs or climb ladders; is limited in her ability to reach (including overhead) and push/pull; should avoid all exposure to extreme cold; should avoid even moderate exposure to extreme heat; and should avoid concentrated exposure to wetness and humidity.

(AT 66.) Dr. Lutes opined that on average, Plaintiff would be absent from work more than four times per month. (*Id.*) The ALJ found this opinion not persuasive as inconsistent with the evidence in the record, including Plaintiff's medical records and her reports of daily activities. (AT 66-67.) The ALJ also found Dr. Lutes's opinion was unsupported, but did not articulate his analysis on this issue. (*See id.*) Finally, the ALJ found the opinions expressed in the prior administrative medical findings to be "not entirely persuasive" because of inconsistencies and lack of support. (AT 65-66.) In doing so, the ALJ rejected the portions of these opinions that stated Plaintiff was more-severely limited in her ability to reach overhead, push, and pull "as outlined in the residual functional capacity above." (AT 65.)

Based on the residual functional capacity and the vocational expert's testimony, the ALJ found Plaintiff capable of performing a number of jobs in the national economy. (AT 67-68.) Thus, the ALJ found Plaintiff not disabled. (AT 68.) On March 30, 2023, the Appeals Council rejected Plaintiff's appeal. (AT 1-4.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision and moved for summary judgment; the Commissioner opposed Plaintiff's motion and requested remand. (ECF Nos. 1, 17, 26.)

### III.     ISSUES PRESENTED FOR REVIEW

The parties have stipulated that the case be remanded for the Appeals Council to instruct the ALJ to conduct further proceedings, but disagree on the scope of review upon remand. (ECF Nos. 26 at 2, 27.) The question is, to what extent should the Court use its discretion to limit the scope of these subsequent proceedings.

The Commissioner contends that, given the scope of the issues needing adjudication on remand, the ALJ should be allowed to revisit any portion of the five-step analysis as required by the evidence. (*Id.* at 7-8.) This would include the authority for the ALJ to revisit the severity of all of Plaintiff's impairments at step two; her symptom testimony; the medical and opinion evidence in the record; her maximum residual functional capacity; and any other matter needed to complete the record and issue a new decision. (*Id.*; *see also* ECF No. 28-2 (Def. proposed stipulation for remand).)

Plaintiff contends the Court's remand order and mandate should bar the ALJ from re-adjudicating "prior administrative findings in the last decision favorable to [her] and unchallenged in this appeal." (ECF No. 28-3 (Pl. proposed stipulation for remand).) This would include, for example, the prior ALJ's favorable "severe" findings at step two concerning Plaintiff's left knee, obesity, cervical spine, and right hand. (*See* ECF No. 27 at 4.) Instead, Plaintiff would have the ALJ focus only on reevaluating the severity of her right shoulder and right arm impairments at step two; her alleged symptoms; the opinion evidence of record; her maximum residual functional capacity; and any other matter needed to complete the record and issue a new decision. (ECF No. 28-3.)

## IV. DISCUSSION

### A. Legal Standards

Under Sentence Four of 42 U.S.C. § 405(g), a district court is granted the authority to review the Commissioner's final decision and enter a judgment affirming, modifying, or reversing. *Harman v. Apfel*, 211 F.3d 1172, 1177-77 (9th Cir. 2000). A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Id.*

If a case is remanded for further proceedings, the regulations generally provide ALJs with broad authority (with the Appeals Council's blessing) to consider "[a]ny issues relating to the claim(s) . . . whether or not they were raised in the administrative

proceedings leading to the final decision in the case." 20 C.F.R. § 404.983(a); *see also* 20 C.F.R. § 404.977(a) (noting the ALJ's authority on remand to hold a hearing and issue another decision); 20 C.F.R. § 404.929 (requiring the ALJ to issue decisions based on the preponderance of the evidence in the record); 20 C.F.R. § 404.953(a) (same).

However, relevant authorities also allow the scope of any further proceedings before an ALJ to be limited. When the Appeals Council remands a case to the ALJ, the regulations state the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Additionally, the Ninth Circuit has noted the district court's discretionary authority to limit the scope of any further proceedings in its mandate upon remand. *See Stacy v Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (noting the district court's remand orders limiting the scope of further proceedings when considering whether the ALJ reviewed matters outside of that scope).

### B. Scope of Review On Remand

Here, after considering the parties' arguments and applicable case law, the Court is persuaded that the ALJ is and should be limited when conducting further administrative proceedings. However, this limitation should be construed against the points of error asserted, as well as the ALJ's duties to supplement the record where appropriate and issue a decision based on all relevant evidence in the record.

In terms of limitations, much of this is controlled by the parties' arguments in the current proceedings. In her motion for summary judgment, Plaintiff argues the ALJ erred in his April 25, 2022 decision by: (I) ignoring Plaintiff's medically determinable right shoulder and right arm impairments of arthritis, joint degeneration, labrum tear, and tendinopathy throughout all steps of the evaluation process; (II) discrediting all medical opinions in the record or failing to develop an adequate record to assess Plaintiff's residual functional capacity; and (III) rejecting Plaintiff's subjective symptom testimony. (ECF No. 17 at 7-20 (emphasis added).) Almost every facet of these arguments concerns Plaintiff's alleged right shoulder and arm impairments. (*See id.* at 7 ("The

clinical evidence is extensive . . ., that her right shoulder impairments cause chronic pain and limit her functionally, including restricting her daily activities."), 12 (arguing error in the ALJ's ignoring of the reviewing doctors' opinions that Plaintiff was "precluded from any overhead reaching"), 19 ("Thus, if the ALJ mischaracterizes or ignores Plaintiff's right shoulder and arm [impairments], it becomes unworkable, in analyzing her testimony, for the ALJ to coherently address the threshold issue of if Plaintiff's impairments can produce the pain she describes.").)

      The Commissioner did not oppose Plaintiff's substantive arguments on these points, agreed the ALJ failed to provide adequate rationale for discounting Dr. Lutes's opinion, and stipulated to a remand for further proceedings. (ECF No. 27 at 2.) Thus, the Court construes Plaintiff's arguments as meritorious and finds the ALJ's decision unsupported by substantial evidence on these points. *Ford*, 950 F.3d. at 1154; *see also* E.D. Cal. Local Rule 230(c) (stating that a failure to oppose a motion may be construed by the Court as a non-opposition to the motion); *Guzman v. Comm'r of Soc. Sec.*, 2023 WL 4848467, at *1 (E.D. Cal. July 28, 2023) (construing the Commissioner's failure to oppose as non-opposition under Local Rule 230(c)).

      Given this, it is clear the ALJ will be required to reexamine the evidence concerning Plaintiff's right arm and shoulder, as Dr. Lutes's diagnoses and opinion directly concerns this impairment. (*See* AT 488-90.) Conversely, for example, neither party disputes the ALJ's findings regarding Plaintiff's alleged cognitive limitations, and Dr. Lutes did not opine on any of Plaintiff's mental impairments. (*See id.*) Thus, it would be inappropriate for the ALJ to reexamine the findings at step two and related sections of the residual functional capacity on this issue. *See Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1218 (C.D. Cal. 2005) (noting the authority of a previous court to issue a mandate directing the further proceedings to focus solely on the points of error raised by the plaintiff and agreed to by the Commissioner in the parties' remand stipulation). But limiting the ALJ's scope of review to just Plaintiff's arm and shoulder impairments, as Plaintiff argues, would be inappropriate for two reasons.

First, Dr. Lutes's diagnoses and opinion touches on more than just Plaintiff's right arm and shoulder impairment. He diagnosed Plaintiff with cervical and lumbar disorders, disc protrusions in the lumbar spine, and severe central stenosis of the cervical spine. (AT 488.) He then opined limitations that arguably relate to Plaintiff's non-arm/non-shoulder impairments, as noted in bold:

> Could lift and carry less than ten pounds occasionally and frequently; **can stand and walk and sit for less than two hours during an eight hour day; can sit for a half hour at one time, stand for a half hour at one time, walk for fifteen minutes every fifteen minutes; requires the opportunity to shift positions at will from sitting or standing/walking; never twist, stoop, crouch, climb stairs or climb ladders**; is limited in her ability to reach (including overhead) and push/pull; **should avoid all exposure to extreme cold; should avoid even moderate exposure to extreme heat; and should avoid concentrated exposure to wetness and humidity**.

(AT 488-90 (emphasis added).) The parties agree the ALJ must reconsider Dr. Lutes's opinion and articulate findings on whether it is supported and consistent with other evidence in the record. *See* 20 C.F.R. § 404.1520c (requiring medical opinions to be considered for their persuasiveness, and requiring the ALJ to articulate findings as to the "supportability" and "consistency" of each medical opinion). It would be inappropriate for the Court to bar the ALJ from reconsidering his conclusions on Dr. Lutes's opinion, which touches on all aspects of Plaintiff's physical limitations, where the ALJ is being ordered to reconsider the evidence—Dr. Lutes's opinion, the support for that opinion, and its consistency with other evidence in the record—underlying those conclusions. *See Ford*, 950 F.3d. at 1154 (reminding that the ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record).

Second, the Ninth Circuit has noted that where a remand order does not preclude new evidence, and such evidence alters the evidentiary landscape in the case, the subsequent order may resolve issues beyond any narrow mandate. *See Stacy*, 825 F.3d at 568-69 (finding, upon a broad view of the mandate, the ALJ was permitted to take new evidence that revised portions of the five-step analysis, despite that some of the

revised portions were not explicitly ordered by the district court). Here, Plaintiff explicitly argues that if Dr. Lutes's opinion, as well as other opinions in the record, were unpersuasive, the ALJ should have elicited additional information or ordered a consultative opinion from an examining doctor. (ECF No. 17 at 18.) This procedure is proper, and sometimes necessary, for the ALJ to resolve a particular issue. 20 C.F.R. § 404.1519a(b); *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (noting the ALJ's duty to order a consultative examination triggered where additional evidence was needed or there was an ambiguity or insufficiency in the evidence). If such evidence demonstrates a substantially different limitation for portions of Plaintiff's physical impairments, the ALJ would not be barred by Court mandate from incorporating it into the analysis. *See Stacy*, 825 F.3d at 567-69; *Ford*, 950 F.3d. at 1154.

Simply stated, the Court cannot grant Plaintiff's request for an order "completely barring" the ALJ from "re-adjudicating prior administrative findings in the last decision favorable to the claimant and unchallenged in this appeal." (ECF No. 28-3 at 2.) Given the broad scope of Dr. Lutes's diagnoses and opinion and the potential for a substantially different evidentiary landscape, the ALJ would be permitted to reexamine his conclusions on almost all of Plaintiff's physical impairments.

Plaintiff also argues a related issue, that the ALJ should be bound by the findings in the April 25, 2022 decision under the "law of the case" doctrine. (ECF No. 27 at 3-4.) This doctrine "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). However, courts that apply this doctrine do so at their discretion, and only after comparing subsequent orders to what came before. *See id.* (noting the doctrine "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust").

Here, the subsequent proceedings have yet to occur. Therefore, it would be inappropriate to speculatively apply this doctrine to what the ALJ might or might not do in

future proceedings. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (noting the role of the judiciary is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution").

**V.    CONCLUSION**

On remand, the ALJ may review the evidence concerning Plaintiff's physical impairments throughout the five-step process, including updating the record through the date of the new decision, eliciting additional information concerning any ambiguities in the evidence, or ordering a consultative opinion from an examining doctor. In the new decision, the ALJ shall reconsider Dr. Lutes's opinion and otherwise revise the analysis on Plaintiff's physical impairments. As the parties do not dispute the ALJ's previous findings on Plaintiff's alleged mental impairments and limitations, and Dr. Lutes did not opine on any of Plaintiff's mental impairments, these portions of the decision need not be revisited.

**ORDER**

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED IN PART;
2. The final decision of the Commissioner is REVERSED; and this case is REMANDED for further proceedings consistent with the analysis above; and
3. The Clerk of the Court is directed to CLOSE this case.

Dated:  July 30, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

3, gome.777